I iGREMILLION, Judge.
In this case, the defendant, the Louisiana Patient’s Compensation Fund (LPCF), on behalf of Dr. Thomas Ford, appeals the rulings of the trial court finding that as a result of their insured’s malpractice, the plaintiffs minor son suffered serious injury and awarding damages. For the following reasons, we affirm.
FACTS
In April of 1994, Mitch, then fifteen, began to complain of pain and soreness in his left hip and leg. At first, it was presumed that Mitch injured his leg in a calf roping exercise. After several days of physical therapy, which failed to relieve his pain, Mitch was taken to the emergency room at Lake Area Medical Center. An examination by Dr. John E. McMillan, the emergency room physician, resulted in Mitch being instructed to take Advil every four hours for pain, keep the leg elevated, apply heat every two hours, and follow up with his regular pediatric physician, Dr. Foster Kordisch, within five days if the symptoms did not subside. After *536 five days with no relief, Mitch was taken to the emergency room at Lake Charles Memorial Hospital, where he was seen by Dr. David Drez, an orthopedist. Mitch was hospitalized for observation, control of pain and fever, consultation with Dr. Ford, an orthopedic surgeon, and further investigative studies. In the next few days, a bone scan and an MRI of Mitch’s left leg and hip led Dr. Ford to diagnose Mitch’s condition as osteo-myelitis of the head of the left femur, complicated by septic arthritis of the hip joint. Mitch underwent surgery to drain the hip area and he was placed on an antibiotic therapy regime. However, this did not alleviate Mitch’s pain and he was eventually taken to the Texas Children’s Hospital and Baylor College of Medicine in Houston. He was hospitalized from May 23 until June 9, 1994. Dr. Charles Stephenson performed an ar-throtomy of the left hip and debridement of the neck of the femur with IV antibiotic therapy. Mitch continued IV antibiotic therapy until July 28, 1994, and continued oral antibiotic therapy through the summer of 1995.
Because of the extensive damage to the hip joint and femur neck, a hip fusion was performed on July 26, 1996. As a result of this fusion, Mitch’s left leg is longer than his right, and he has a significant limp which causes severe knee and back problems.
A complaint of malpractice was filed with the LPCF on March 22, 1995. The basis of this complaint was that Dr. Ford was negligent in his antibiotic treatment of Mitch. On March 12, 1996, Dr. Ford admitted liability and agreed to pay his statutory obligation of $100,000.00. Jeanne reserved her right to proceed against |3LPCF. After a trial on the merits, the trial court found that as a result of Dr. Ford’s malpractice, Mitch suffered damages amounting to $3,239,027.96. However, due to the cap on damages set by La.R.S. 40:1299.39, Mitch’s recovery was limited to $500,000.00. LPCF moved for a new trial based on Graham v. Willis Knighton Medical Center, 97-188 (La.9/9/97); 699 So.2d 365. The trial court denied the motion for a new trial and LPCF appealed, assigning three errors.
ASSIGNMENT OF ERROR NUMBER ONE
In its first assignment of error, LPCF asserts that the trial court erred in excluding evidence of causation of the damages in excess of $100,000.00. We note that LPCF neither points to nor discusses any evidence that was excluded. However, under the heading ISSUES PRESENTED FOR REVIEW, LPCF asks whether the plaintiff bears the burden of proving the statutorily admitted liability of the health care provider caused damages in excess of $100,000.00. Although LPCF never comes out and says as much, we believe its argument is that Vick did not carry her burden of proof.
At the time this matter was heard, payment of the statutory obligation of $100,-000.00 established an admission of negligence, causation, and damages according to Pendleton v. Barrett, 95-2066 (La.5/31/96); 675 So.2d 720. Therefore, LPCF could not contest the liability for or the causation of the original harm. However, after the trial court’s ruling in the case sub judice, the Louisiana Supreme Court overruled Pendleton in Graham, 699 So.2d 365. In Graham, 699 So.2d at 372, the court stated:
We now conclude that the legislative intent of “liability” in Section L1299.44 C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,-000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.
We find that Vick successfully proved the admitted malpractice caused damages in excess of $100,000.00. The trial court found that “[b]ut for the malpractice committed by Dr. Thomas Ford, Albert Mitch Vick, Jr., would have had a successful recovery without any disability or physical restrictions.” We will not disturb this finding in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). This finding was based on the depositions of Dr. Stephenson, Dr. Ronald Lindsey, an orthopedic physician, and Dr. Larry Tabor, an infectious diseases special *537 ist. These depositions provide a reasonable basis to support the trial court’s finding that, but for the malpractice committed by Dr. Ford, Mitch would not have suffered these damages. In particular, Dr. Tabor stated that it was his opinion that if not for the inadequate care of Dr. Ford, Mitch would be “bronco riding today.”
ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, LPCF claims that the trial court erred in excluding evidence on the issue of liability of others. Again, LPCF points to no instance where the trial court excluded evidence concerning the liability of others. In fact, when LPCF’s attorney sought to question Jeanne on what treatment Mitch received prior to Dr. Ford’s treatment, the trial court permitted her to testify to such over the objection of her attorney who argued that they were trying to relitigate the issue of causation. Therefore, we find no merit in this assignment of error.
IbASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, LPCF claims that the trial court erred in denying its motion for a new trial. The basis of this assignment is that the decision in Graham overruled Pendleton which was the basis of the trial court’s granting of a motion in limine prohibiting the defendants from presenting evidence of the possible liability of others. “A new trial shall be granted, upon contradictory motion of any party, in the following eases: (1) When the verdict or judgment appears clearly contrary to the law and the evidence.” La.Code Civ.P. art.1972.
[A]n appellate court is bound to adjudge a case before it in accordance with the law existing at the time of its decision. See Dripps v. Dripps, 366 So.2d 544 (La.1978), and cases cited therein. Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment which was correct under the law in effect at the time it was rendered. See id. at 547-48. Needless to say, where the law has changed after the trial court’s decision, the applicability of the new law can be argued for the first time only on appeal.
Segura v. Frank, 93-1271, 93-1401, p. 15-16 (La. 1/14/92); 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994).
In the present case, the trial court considered the motion for new trial after the supreme court handed down its decision in Graham, 699 So.2d 365. LPCF based its motion for new trial on Graham. The trial court was well aware of the Graham decision when it denied the motion for new trial. We find that the trial court did not abuse its discretion. Indeed, our review of the record finds that even under the standard enunciated in Graham, there was ample evidence upon which the trier of fact could have found that, but for Dr. Ford’s malpractice, Mitch “would have had|6a successful recovery without any disability or physical restrictions.”
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the Louisiana Patient’s Compensation Fund.
AFFIRMED.